UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDMUNDO ESPARZA IBARRA,<br><br>              Petitioner,<br><br>      v.<br><br>JASON KNIGHT, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Acting Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General,<br><br>              Respondents. | Case No.  1:25-cv-00597-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Since the United States began restricting immigration into this country in the late 19th century, it has distinguished between those noncitizens seeking entry into the country and those already residing within it. Noncitizens "stopped at the boundary line" who have "gained no foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), do not enjoy the same constitutional protections afforded to persons inside the United States, *Zadvydas v. Davis*, 533 U.S. 678, 693

(2001). But once a noncitizen enters the United States, "the legal circumstance changes," for the constitutional right to due process applies to all "persons" within our nation's borders, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. This distinction between noncitizens who have entered and reside in the United States and those who have not yet entered "runs throughout immigration law." *Id.*

The Department of Homeland Security adhered to this principle until very recently, applying two distinct statutory schemes for the detention of noncitizens: 8 U.S.C. § 1225 for noncitizens "seeking admission into the country," and 8 U.S.C. § 1226 for those "already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225(b) mandates detention without bond hearings, except for narrow humanitarian parole. In contrast, § 1226 provides discretionary detention with bond hearings, allowing release for detainees who pose no danger, security threat, or flight risk. *See Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).

DHS has now abandoned this approach, sweeping all noncitizens who entered without inspection into § 1225(b)(2)(A)'s mandatory detention net— regardless of how long they have lived here. This policy shift, endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025), has trapped thousands in detention without bond hearings,

including long-term residents with no criminal records.

Dozens of district courts across the nation—with more each day—have rejected DHS's expansion of § 1225(b)(2)(A)'s mandatory detention to noncitizens already residing here.[1] Only two courts, as far as the Court is aware, have sided with the government.[2] This Court joins the overwhelming majority and holds that § 1225(b)(2) does not apply to noncitizens like Petitioner who were detained after living in the United States for years.

## BACKGROUND

Petitioner is a citizen of Mexico who entered the United States without inspection in 2001. Dkt. 16-1 ¶ 3. On October 19, 2025, ICE agents arrested Petitioner during a raid at a racetrack in Wilder, Idaho, where authorities suspected illegal gambling was taking place.[3] Petitioner was not charged with any crime

---

[1] *See, e.g.*, *Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at *10 (W.D.N.Y. Nov. 4, 2025); *Guerrero Orellana v. Moniz*, No. 25-cv-12664, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *13; *Lepe v. Andrews*, No. 1:25-CV-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Alejandro v. Olson*, No. 1:25-CV-02027, 2025 WL 2896348, at *8 (S.D. Ind. Oct. 11, 2025); *Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *4 (S.D. Tex. Oct. 8, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Barrera v. Tindall*, No. 3:25-cv-241, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Mosqueda v. Noem*, No. 5:25-cv-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025).

[2] See *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025).

[3] Several individuals were arrested in the raid, and many sought relief in this Court. The Court is resolving multiple petitions today, in separate orders that are substantially identical to the one issued here.

related to the gambling investigation. ICE charged him under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without admission or parole and placed him in removal proceedings under 8 U.S.C. § 1229a. He is currently detained at the Elmore County Jail in Mountain Home, Idaho.

The crux of this dispute centers on a recent shift in DHS and Executive Office for Immigration Review (EOIR) policy. On July 8, 2025, ICE issued "Interim Guidance Regarding Detention Authority for Applicants for Admission," instructing that all persons who entered without inspection be subject to mandatory detention under § 1225(b)(2)(A), regardless of when they were apprehended or how long they have resided in the United States. On September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedential decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that immigration judges lack authority to conduct bond hearings for individuals who entered without admission, as they are deemed "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A).

Petitioner filed this amended habeas petition on October 31, 2025, challenging his detention and seeking either immediate release or a bond hearing. Dkt. 6. He also filed an emergency motion for temporary restraining order. Dkt. 3.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to

every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Id.* (quotation omitted).

The Constitution also guarantees every person in the United States due process of law, including persons who are not United States citizens. *E.g., Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003) ("The Supreme Court has long recognized that deportable aliens are entitled to constitutional protections of due process." (citing *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903))); *see also Zadvydas*, 533 U.S. at 695.

## ANALYSIS

### A. Jurisdiction

Respondents first challenge the Court's jurisdiction over this matter, and particularly the Court's authority to bar Respondents from transferring Petitioner out of the District of Idaho or taking actions to effect his removal from the United States. To the extent that the Order issued on October 28, 2025, could be interpreted to interfere with Petitioner's ongoing or future removal proceedings, Respondents are correct that such action falls outside of the Court's jurisdiction. Otherwise, however, jurisdiction is proper.

Federal district courts have limited authority to review legal questions

related to removal proceedings. Under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." In other words, an individual in removal proceedings usually may dispute the immigration court's legal conclusions only before the court of appeals after receiving a final removal order. Relatedly, under § 1252(g), "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Respondents argue that § 1252(b)(9) and (g) together strip this Court of jurisdiction to consider Petitioner's statutory entitlement to a bond hearing. But this reading of § 1252 runs counter to Supreme Court precedent and the conclusion of dozens of district courts that have recently considered this precise question.

Jurisdiction here hinges on whether Petitioner's question of law—his detention under § 1225 rather than § 1226(a)— "arises from" his removal proceedings and is therefore within the scope of § 1252(b)(9). The Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), roundly rejected this reading of § 1252(b)(9). *Jennings*, much like the present matter, involved habeas petitions filed by individuals in removal proceedings who argued that they were entitled to bond

hearings to justify their continued detention. *Id.* at 290-91. The Court noted that their habeas claims did "arise from" removal proceedings in a literal sense— "if those actions had never been taken, the aliens would not be in custody at all." *Id.* at 293. But this "staggering" interpretation of § 1252(b)(9) would "make claims of prolonged detention effectively unreviewable" and "lead [] to results that no sensible person could have intended." *Id.* at 293-94 (internal quotation omitted). Thus, § 1252(b)(9) bars jurisdiction only in relatively narrow circumstances where a party directly or indirectly challenges removal proceedings themselves—such as "the decision to detain them in the first place" or "the process by which their removability will be determined." *Id.* at 294-95; *see U.S. Dep't of Homeland Sec. v. Regents of Univ. of Cal*, 591 U.S. 1, 19 (2020) (noting that § 1252(b)(9) "is certainly not a bar where . . . the parties are not challenging any removal proceedings"). The same is true of § 1252(g)'s jurisdictional bar for claims arising from the Attorney General's decision "to commence proceedings, adjudicate cases, or execute removal orders." *See Reno v. American-Arab Anti-Discrimination Cmte.*, 525 U.S. 471, 482 (1999).

Respondents attempt to distinguish *Jennings* by arguing that Petitioner "*does* challenge the government's decision to detain him in the first place." Dkt. 8 at 9. This is incorrect. Petitioner does not object to the initial decision to detain him, only to his continued detention without a bond hearing. As the Ninth Circuit has

explained, "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (internal quotation omitted). The nature of the Government's detention authority—whether it stems from § 1225 or § 1226(a)—is precisely this sort of collateral question. *See Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) (explaining that § 1252 does not "preclude habeas review over challenges to detention that are independent of challenges to removal orders" (quoting H.R. Cong. Rep. No. 109-72, at 2873 (May 3, 2005)).

This Court thus joins the consensus of numerous district courts that have recognized jurisdiction over this issue since DHS's policy change in July 2025. *See, e.g., Ochoa v. Noem*, No. 1:25-CV-00881, 2025 WL 3125846 at *4 (D.N.M. Nov. 7, 2025) ("[D]istrict courts across the country, have found subject matter jurisdiction over petitions challenging determinations that a petitioner was statutorily ineligible for bond under § 1226(a)."); *Chavez*, 2025 WL 2730228, at *4 ("Petitioner's challenge to his detention without a bond hearing is collateral to his removal proceedings and does not fall within § 1252(b)(9)'s jurisdictional bar."); *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 3122837 at *7 (N.D. Ohio Nov. 7, 2025) (same).

Finally, Respondents contest the Court's authority to prohibit Petitioner's transfer out of the Court's jurisdiction. Ironically, they complain that this

restriction—not their own policy—prevents them from giving Petitioner his requested bond hearing. It is true that 8 U.S.C. § 1231(g)(1) provides that the Attorney General "shall arrange for appropriate places of detention for aliens detained pending removal," and 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of "any other decision or action" left to "the discretion of the Attorney General." But, as the Second Circuit has detailed, these statutes do not strip federal courts of jurisdiction over the transfer of detained immigrants. *Ozturk v. Hyde*, 136 F.4th 382, 394-96 (2d Cir. 2025).

"To begin with, § 1252(a)(2)(B)(ii)'s bar on jurisdiction applies only to those decisions where Congress has expressly 'set out the Attorney General's discretionary authority in the statute.'" *Id.* at 395 (quoting *Kucana v. Holder*, 558 U.S. 233, 247 (2010)). In this regard, § 1231(g) is not a discretionary statute: it "uses the obligatory 'shall' rather than a permissive 'may.'" *Id.* Moreover, the statute does not mention transfers at all, meaning that any discretion granted to the Attorney General is at best implicit. *Id.* District courts in immigration habeas actions thus retain the inherent equitable authority to restrict the transfer of petitioners during the pendency of the proceedings. *Oliveros v. Kaiser*, No. 25-CV07117-BLF, 2025 WL 2677125, at *8-9 (N.D. Cal. Sept. 18, 2025). Here, the balance of equities favors Petitioner remaining in this District to expedite resolution of the case and ensure he maintains access to counsel.

For these reasons, the Court has jurisdiction over Petitioner's claim and jurisdiction to prohibit his transfer to other districts. Although the Court has no power to review the removal proceedings themselves, Petitioner's challenge to his detention without a bond hearing is properly before the Court.

## B. Exhaustion

As the final issue prior to reaching the merits, the Court must determine whether Petitioner has exhausted his administrative remedies. For habeas claims, exhaustion is prudential, rather than jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "[A] court may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (citation and quotation marks omitted).

Because the BIA's decision in *Matter of Yajure Hurtado* categorically bars immigration judges from conducting bond hearings for individuals who entered without inspection, waiver of the exhaustion requirement is appropriate here. The Ninth Circuit makes clear it does not require exhaustion when pursuing administrative remedies would be futile. That futility exception applies, for example, when the agency has already staked out its position on the relevant question, making the outcome of any administrative process a foregone conclusion.

*El Rescate Legal Servs., Inc. v. Exec. Off. of Imm. Rev.*, 959 F.2d 742, 747 (9th Cir. 1992).

As other courts have recognized in identical circumstances, the BIA clearly staked its position here when it issued *Matter of Yajure Hurtado* and held § 1225(b)(2)'s mandatory detention provisions apply to *any* noncitizen present in the United States "without being admitted or paroled." *See Chavez*, 2025 WL 2730228, at *3. Any attempt by Petitioner to request bond would therefore be futile. *See id.*; *Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 2670875, at *8 (C.D. Cal. July 28, 2025); *Rico-Tapia v. Smith*, No. 25-00379, 2025 WL 2950089, at *4 (D. Haw. Oct. 10, 2025) Accordingly, the Court finds the prudential exhaustion requirements waived for futility. It now turns to the merits of Petitioner's claim.

## C. Section 1226(a), Not Section 1225(b)(2), Governs Petitioner's Detention

The central question here is narrow but significant: whether § 1225(b)(2)(A)'s mandatory detention provision applies to a noncitizen who entered without inspection 25 years ago and was later apprehended in the interior, or whether § 1226(a)'s discretionary detention scheme governs, entitling him to a bond hearing. Because this presents a pure question of statutory interpretation, the Court begins with the two statutes at issue, 8 U.S.C. §§ 1225 and 1226—both sections part of the Immigration and Nationality Act ("INA"). *See Lackey v.*

*Stinnie*, 604 U.S. 192, 199 (2025).

The Ninth Circuit warns that "divining the meaning of the complex provisions of the INA is ordinarily not for the faint of heart." *Rodriguez*, 779 F. Supp. 3d at 1256 (quoting *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (quotation marks, brackets, and ellipses omitted). To wade through the "morass" of the INA, *Torres*, 976 at 923, "courts must 'use every tool at their disposal to determine the best reading of the statute,'" *Rodriguez*, 779 F. Supp. 3d at 1256 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373 (2024)). In this case, the Court not only has the benefit of these interpretive tools but also the numerous decisions from other courts that have grappled with this issue.

### 1. The Statutory Framework

As touched upon earlier, two statutes govern pre-removal detention. Section 1225 addresses noncitizens "seeking admission into the United States." *Jennings*, 583 U.S. at 289. Section 1225(b)(2)(A) mandates detention when "an alien who is an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Such detention is mandatory except "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). Noncitizens detained under § 1225(b) "are not entitled to a bond hearing," *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

In contrast, § 1226 governs detention of noncitizens "already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Section 1226(a) establishes "the default rule"—discretionary detention with the possibility of release on bond or conditional parole. 8 U.S.C. § 1226(a). Detained individuals may request bond hearings and can be released upon showing they pose no danger, security threat, or flight risk. *Hernandez*, 872 F.3d at 982.

## 2. Section 1226(a) Governs Petitioner's Detention.

Respondents argue Petitioner is subject to mandatory detention under § 1225(b) because he is "an applicant for admission." The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )." 8 U.S.C. § 1225(a)(1). Because Petitioner is "[a]n alien present in the United States who has not been admitted," and therefore qualifies as an "applicant for admission" under § 1225(a), Respondents insist he is subject to the mandatory detention provisions for "applicants for admission" under § 1225(b)(2).

As countless courts have concluded, Respondents' proposed interpretation "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of

prior statutory interpretation and practice." *Lepe v. Andrews*, 2025 WL 2716910, at *4 (collecting cases).

For 1225(b)(2)(A) to apply, several conditions must be met: an "examining immigration officer" must determine that the individual is (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondents' selective reading of the statute ignores the phrase, "seeking admission." This "violates the rule against surplusage and negates the plain meaning of the text." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citing *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). "As numerous courts have observed, if all 'applicant[s] for admission' also are 'seeking admission,' then the words 'seeking admission' would be surplusage." *Alvarez Ortiz*, 2025 WL 3085032, at *7 (collecting cases).

If Congress did not intend to distinguish between an "applicant for admission" and those "applicant[s] for admission" who are "seeking admission," it simply could have omitted the "seeking admission" language." But it did not. As "every clause and word of a statute should have meaning," this phrase, "seeking admission," must therefore mean something separate from "an applicant for admission." *Polansky*, 599 U.S. at 432. The use of the present participle "seeking" implies the present action of "asking for" or "trying to acquire or gain," and the

"entry," as it has long been understood, implies "a crossing into the territorial limits of the United States." *Lepe*, 2025 WL 2716910, at *5 (citations omitted). "To piece this together, the phrase 'seeking admission' means that one must be actively seeking' 'lawful entry.'" *Id.*

While Petitioner may qualify as an "applicant for admission," the phrase "seeking admission" cannot reasonably be stretched to encompass someone who entered the country years ago, established a life here, and was living peacefully in Idaho until his arrest. At the time of his apprehension, Petitioner was not "seeking" anything—he was simply present in the United States.

This plain reading of § 1225 places it in harmony with § 1226 and the overall statutory scheme. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (explaining the words of a statute must be read in their entire context and with a view to their place in the overall statutory scheme). The entire framework of § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," relates to the inspection process at or near the border: "Inspection" occurs at ports of entry, *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021); "expedited removal" applies to those "arriving in the United States," § 1225(b)(1)(A); and the provision addresses "stowaways" discovered at borders, § 1225(a)(2).

Thus, as the Supreme Court explained, § 1225 applies "at the Nation's

borders and ports of entry, where the Government must determine whether an alien

seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Nothing in

this framework contemplates interior enforcement against individuals who have

resided in the country for years.

"And just to pile on a bit," Respondents' construction of the statute "would

create surplusage twice over," *Polansky*, 599 U.S. at 432, by rendering the recent

amendment to 8 U.S.C. § 1226(c) meaningless. Section 1226(c)(1)(E), added in

2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is

inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United

States without being admitted or paroled," *and* (ii) who "is charged with, arrested

for, convicted of, or admits" to committing certain crimes. 8 U.S.C. §

1226(c)(1)(E). If § 1225(b)(2)(A) already mandates the detention of *all* noncitizens

who have not been admitted, as Respondents contend, then Laken Riley serves no

purpose.

"This is a presumptively dubious result." *Martinez*, 792 F. Supp. 3d at 221.

Courts "do not lightly assume Congress adopts two separate clauses in the same

law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

Accordingly, this Court declines to find "that Congress passed the Laken Riley Act

to 'perform the same work' that was already covered by § 1225(b)(2)."

*Maldonado*, 2025 WL 2374411, at *12 (quoting *Taylor*, 596 U.S. at 857).

Finally, Respondents' contrary interpretation also upends decades of settled practice without clear congressional intent. Since IIRIRA's enactment in 1996, DHS has consistently applied § 1226(a) to noncitizens who entered without inspection but were apprehended while residing in the United States. *See Rodriguez*, 779 F.Supp.3d at 1260-61. Executive Branch regulations issued contemporaneously with IIRIRA explicitly stated that noncitizens "present without having been admitted or paroled (formerly referred to as [those] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). As the Supreme Court has recognized, such "longstanding practice of the government" serves as an important interpretive aid, *Loper Bright*, 603 U.S. at 386, adding an additional basis to refute Respondents' interpretation.

Respondents' most compelling argument to support their position "is really a policy argument, projected onto Congress." *Romero*, 2025 WL 2403827, at *12. They argue that interpreting the statutes this way creates an "anomaly" by treating those who entered illegally better than those who present themselves for inspection. Dkt. 8 at 11. Respondents are correct in the sense that the IIRIRA, enacted in 1996, "placed on equal footing . . . all immigrants who have not been lawfully admitted." *Torres*, 976 F.3d at 928.

But, as the district court in *Romero* recognized, "Respondents ask the wrong

question." *Romero*, 2025 WL 2403827, at *12. In reality, treating the detention of noncitizens stopped at or near the border differently from noncitizens who reside within the country is not an anomaly. Instead, it reflects the long-recognized distinction in our immigration laws and the Constitution that due process protections apply to noncitizens residing within the country but not those stopped at or near the border. *See Zadvydas*, 533 U.S. at 690.

"Civil immigration detention, which is nonpunitive in purpose and effect, is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community." *Lepe*, 2025 WL 2716910, at *9 (quoting *Zadvydas*, 533 U.S. at 690) (quotation marks and brackets omitted). "It is therefore reasonable to read these statutes against that backdrop." *Id.* (citation, quotation marks, and brackets omitted). Moreover, policy arguments cannot override the plain meaning of the text. *Id. See also Romero*, 2025 WL 2403827, at *12.

In sum, the Court declines to credit Respondents' position that Petitioner is "seeking admission" to the United States and thus subject to mandatory detention under 1225(b)(2)(A).

## D. Due Process

Petitioner's continued detention without a bond hearing also violates his Fifth Amendment due process rights. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const.

amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. As noted, these protections extend to noncitizens facing removal. *Id.*

To determine whether civil detention violates a detainee's procedural due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* requires courts to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### 1. Private Interest

The interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Courts also consider detention conditions, including whether a detainee is held in conditions indistinguishable from criminal incarceration. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025).

Petitioner, who has no significant criminal history, is detained alongside those facing criminal charges and convicted criminals. He is "experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, ... lack of privacy, and, most fundamentally, the lack of freedom of movement." *Gunaydin*, 784 F. Supp. 3d at 1187. The first *Mathews* factor therefore strongly favors Petitioner.

### 2. Risk of Erroneous Deprivation

The second factor "requires courts to assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Gunaydin*, 784 F. Supp. 3d at 1187. Respondents contend Petitioner is subject to mandatory detention under § 1225(b) and have provided him no bond hearing or other procedural safeguards balancing his liberty interest against the government's enforcement interest.

The Ninth Circuit has held that when a substantial liberty interest is at stake, the government must prove by clear and convincing evidence that an individual poses a danger or flight risk before depriving him of liberty. *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011). Here, Respondents have detained Petitioner without any individualized justification. A bond hearing would allow Petitioner to receive a meaningful assessment of whether he is dangerous or likely to abscond,

greatly reducing the risk of erroneous deprivation.

### 3. Government's Interests

Civil detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. The government has identified no information establishing Petitioner poses a danger or flight risk. Its only apparent interest in detaining Petitioner—which imposes additional fiscal and administrative burdens—is to fulfill an arrest quota of 3,000 immigration arrests per day set by the current administration. *See Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 868 (C.D. Cal. 2025).

All three *Mathews* factors weigh in favor of finding Petitioner's due process rights have been violated and ordering his release.

## E. Remedy

Concluding that § 1226(a) governs Petitioner's detention, the question of the proper remedy remains. Petitioner asks the Court to order his immediate release, while Respondents argue that he should merely receive a bond hearing pursuant to § 1226(a).

A district court has equitable discretion, "as law and justice require," for remedying unlawful detention in a habeas petition pursuant to § 2254. *See Brown v. Davenport*, 596 U.S. 118, 127-28 (2022). Despite this discretion, however, relief "should be no more burdensome to the defendant than necessary to provide

complete relief to the plaintiffs before the court." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). Thus, relief "must be narrowly tailored to remedy the specific harm shown." *Id.*

In many circumstances akin to the present case, a bond hearing would indeed be sufficient to rectify the violation of Petitioner's unlawful detention. *See E.C. v. Noem*, No. 2:25-cv-01789, 2025 WL 2916264, at *12 (D. Nev. Oct. 14, 2025); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 45-46 (1st Cir. 2021). Here, however, Respondents have failed utterly to articulate a legitimate interest in the Petitioner being detained. There is no evidence that he is a flight risk or poses a danger to the community. To the contrary, Petitioner's lack of criminal record, long residence in the United States, and familial ties to the United States all indicate that he is neither a danger nor a flight risk.

In recent months, courts across the country have ordered the immediate release of detainees in similar situations. *E.g., Lepe*, 2025 WL 2716910, at *10; *J.U. v. Maldonado*, No. 25-cv-4836, 2025 WL 2772765, at *10 (E.D.N.Y. Sept. 29, 2025); *Rosado v. Figueroa*, No. 25-cv-2157, 2025 WL 2337099, at *19 (D. Ariz. Aug. 11, 2025); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025). As one court explained, "[w]ithout a legitimate interest in her detention, immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention." *Santiago v.*

*Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13-14 (W.D. Tex. Oct. 2, 2025).

The same is true here. Accordingly, the Court orders Petitioner's immediate release

from custody.

## ORDER

**IT IS ORDERED that:**

1.   Petitioner's amended petition for a writ of habeas corpus (Dkt. 6) is

   GRANTED. Accordingly, Petitioner shall be immediately released from

   custody.

2.   Petitioner's Motion for a Temporary Restraining Order (Dkt. 3) is

   DENIED as MOOT.

DATED: November 19, 2025

B. Lynn Winmill
U.S. District Court Judge